IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No._____

IN RE *EX PARTE* APPLICATION OF BRITANNIC ASSETS LTD UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM PALANTIR TECHNOLOGIES INC.

**DECLARATION OF DR. ALEXANDER AMANN
IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER
TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Dr. Alexander Amann declares under penalty of perjury under the laws of the United States of America as follows:

1. I am an attorney licensed under the laws of the Principality of Liechtenstein and I am managing Partner of the law firm Amann Partners Attorneys at Law, a law firm with offices in Liechtenstein, Switzerland and Austria. I am fluent in both written and spoken English (among other degrees, I obtained a Masters of Law from UCLA).

2. I respectfully submit this Declaration on behalf of Petitioner Britannic Assets Ltd (based in Tortola British Virgin Islands, "BAL"), in support of an application pursuant to 28 U.S.C. § 1782(a) to obtain discovery from Palantir Technologies Inc. ("Palantir"), headquartered at 1555 Blake Street Suite, 250 Denver, CO 80202, which is found in this District, for use in an action filed by the Petitioner and another Plaintiff in the Principality of Liechtenstein against defendants Accuro Fund Solutions AG ("AFS"), Liechtensteinische Landesbank AG ("LLB") and Jan Hartmann. That proceeding is currently pending before the Princely District Court in Vaduz (Principality of Liechtenstein), a judicial body and court of first instance that will adjudicate the case; the case in Liechtenstein is pending under the case no. 08 CG.2022.57 Princely District Court Vaduz (Principality of Liechtenstein) (the "Liechtenstein Action").

3. I am familiar with the facts set forth herein based upon my legal education and experience and my representation of the Petitioner in the Liechtenstein Action. If the Court allows the requested discovery, I respectfully submit that the discovery will shed meaningful light on

factual matters in dispute in the Liechtenstein Action. I describe below the situation as Petitioner alleges that has given rise to the Liechtenstein Action and the basis for Petitioner's request for discovery from Palantir.

4. Stefan Gomoll ("Gomoll") is a director and representative of BAL, the Petitioner herein. Petitioner is an aggrieved investor who wanted to invest an amount of USD 1.4 million in the STS Tech Investment Fund (hereinafter "STS Tech Fund"). STS Tech Fund is a sub-fund of the Alternative Investment Fund (AIF) WH Inv. Man. SICAV domiciled in the Principality of Liechtenstein, 9490 Vaduz. The sub-fund STS Tech Fund was established in June 2020, with its first prospectus dated June 25, 2020.

5. The initiators of the STS Tech Fund were the third defendant in the Liechtenstein Action, Jan Hartmann, and Volker Wieker, a former General of the German Armed Forces. At the time of inception of the STS Tech Fund, Hartmann/Wieker had the idea that it should invest in the US data analysis company Palantir, whose initial public offering ("IPO") was imminent. General Wieker is not a party in the Liechtenstein Action.

6. Petitioner understands and alleges that Mr. Hartmann was also a promoter / distributor of the fund and exercised significant or even a controlling influence on the decisions of the fund or the Alternative Investment Fund Manager in connection with among other things fund administration and asset management. Hartmann now denies this since such functions require a license as a financial intermediary from the Liechtenstein Financial Market Authority ("FMA"), a license he did not hold.

7. The first defendant in the Liechtenstein Action, AFS, is the Alternative Investment Fund Manager ("AIFM"), the second defendant, LLB, is the custodian bank of WH Inv. Man. SICAV and its sub-fund STS Tech Fund. AFS and LLB are responsible for compliance with the legal provisions applicable to STS Tech Fund and the prospectus. AFS as the AIFM of STS Tech Fund was responsible for the administration of the STS Tech Fund (including the issuance of fund shares) and the management of investors' money. LLB as the custodian bank of STS Tech Fund had supervisory duties with regard to the fund's management, including the issuance of fund shares.

8. The Petitioner subscribed and received shares of the STS Tech Fund for USD 1 million on July 5, 2020, and immediately thereafter expressed interest in further, more extensive investments in the fund. Therefore, on August 17, 2020, there was a joint meeting between Gomoll as representative of Petitioner on one side, and the Chairman of the Board of Directors of the first defendant AFS, Roger Zulliger, and the third defendant Hartmann, on the other side, about a further subscription by Petitioner in the amount of USD 1.4 million. Immediately after this meeting, on August 18, 2020, Gomoll organized the further subscription of shares in the STS Tech Fund for Petitioner.

9. Petitioner was welcomed as investor of STS Tech Fund by Jan Hartmann on August 21, 2020. Nevertheless, AFS subsequently failed and refused to transfer the subscribed fund shares to the Petitioner.

10. LLB announced this on August 26, 2020 in an e-mail to the Petitioner, stating: *"FUND NOT LAUNCHED"* and containing the following request: *„Please cancel this order by*

*close of business today"*. This was incomprehensible to Petitioner. The STS Tech Funds had already been launched two months earlier. Petitioner had already subscribed fund shares in the amount of USD 1 million and these had already been transferred to Petitioner. Petitioner therefore refused to agree to LLB's request to cancel and withdraw the subscriptions. Petitioner alleges that the defendants' conduct was illegal and violated various duties owed to Petitioner under Liechtenstein law.

11. AFS and LLB allege that fund subscriptions were rejected because it was *impossible* for them to buy further Palantir shares. AFS states that it was notified by Palantir that all share purchases on the secondary market, *including the signing of the share purchase contract, and the payment of the purchase price and attorney's fees for the transaction*, had to be completed by August 31, 2020, 5:00 pm PST, or Palantir would have denied approval of the purchase and / or transfer registration. According to AFS's allegations, no purchases of Palantir shares on the secondary market were possible between September 1, 2020, and the IPO which took place on September 30, 2020 and any transfer would be rejected (rather than be registered at a later stage).

12. Besides factual and legal arguments that this could not justify the rejection of Petitioner's subscription, Petitioner argues that the allegation that it was not possible to acquire further Palantir shares prior to the direct listing is not true but is just an excuse to evade liability. Furthermore, Petitioner argues that alleged difficulties in acquiring additional shares was not the real reason for rejecting the subscriptions but was instead based on conflicts of

interests on the part of AFS and/or Hartmann, the latter being the *spiritus rector* of the fund structure and its business conduct.

13. The defense argument is not supported by the evidence AFS itself has submitted with the court so far. For example, the only evidence AFS has submitted to date was an e-mail of a US law firm dated August 27, 2020 - i.e., after the rejection of subscriptions by LLB on August 25/26, 2020 – which stated the following (emphasis added):

> *"As you are likely aware, in order to ensure an orderly transition to a third party transfer agent (Computershare), all pending secondary sales and transfers that are not closed and fully funded by 5 PM US Pacific Time on Monday, August 31, 2020 will be removed from our transfer queue and not recorded or processed **by us**. This means that all documents must be signed and submitted, and payments made and receipt confirmed, ahead of that time. We urge you to act with all due speed to conclude your transactions well in advance of that deadline. Thank you for your understanding and cooperation."*

This e-mail is not specifically addressed to the claimed impossibility to enter into a purchase agreement for Palantir shares prior to the direct listing but simply proves that Palantir was pausing its recording process to allow for a more orderly transition to Computershare as its transfer agent, and giving notification that the prior transfer agent would not process transfers that were not completed by the cut-off date August 31, 2020.

14. Furthermore, only Class A common stock of Palantir was listed with the NYSE, a fact that could be discerned from the prospectus that was publicly available on the SEC EDGAR website on August 25, 2020, 0:00 PST. Based upon our review of publicly available

Declaration of Dr. Alexander Amann                                                                 5

sources, there was significant trading activity in Palantir shares in August 2020 and on September 01, 2020. And the suspension of transfer recordation did not preclude entering into Stock Purchase Agreements regarding Palantir shares in the relevant time frame with for example the possibility that completion or recording of transfer would simply be delayed to a later date. Even if it were true that Palantir completely rejected share transfers in September 2020, many other possibilities existed for the transfer of Palantir shares, including the transfer of other classes of shares.

15. Lastly, Petitioner alleges AFS and Hartmann were aware of other brokers and parties who wanted to sell Palantir shares or shares in other corporate vehicles that held such Palantir shares - these opportunities were obviously not taken up.

16. Petitioner seeks to test the veracity of the defenses and to discover what if any specific communications may have been made about any deadlines for share transactions. Consequently, it is relevant for the Liechtenstein Action to obtain or ascertain (i) correspondence between Palantir on one side and AFS, Hartmann and/or Volker Wieker on the other side, (ii) over the counter trading activity with Palantir shares in the period from January 1, 2020 to September 30, 2020 (when Palantir conducted its IPO), (iii) how the Palantir share register developed in the aforementioned period, and (iv) whether there was any written communication from Palantir regarding the suspension of transfers of Palantir shares from August 18, 2020, through August 25, 2020 (i.e. the day AFS decided to refuse Petitioner's subscription), in order to demonstrate in the Liechtenstein Action that it would have been possible for AFS at any time to fully transfer or enter into SPAs with regard to all or at least all other share classes except for Class A common stock. The requested

discovery from Palantir is expected to shed light on these and other relevant issues. A copy of the proposed subpoena to Palantir is attached hereto as Exhibit 1.

17. Petitioner further alleges that the real reason for AFS and Mr. Hartman's conduct is that they had a significant conflict of interest.

18. The initiators of the fund, Hartmann and Wieker, and possibly also AFS and/or Roger Zulliger, were most likely themselves invested in the STS Tech Fund and/or Palantir in order to participate in the highly anticipated increase in value of the Palantir shares that was to result from the IPO. Both AFS and Hartmann in their counterstatements in the Liechtentein action avoid the topic of whether they were invested in STS Tech Fund and/or directly in Palantir shares.

19. In addition, the prospectus for the STS Tech Fund stipulated an immense catch up performance fee of 15% if the STS Tech Fund performance was between 100% and 200% and 30% if the performance was 200% or higher (below 100% performance, the fee was zero). While there was an estimated performance fee associated with the STS Tech Fund of CHF 13 – 16.5 million (USD 13 – 16.5 million), AFS states that it and LLB did not receive the performance fee, but they make no comment on who received it, and Hartmann also alleges that he has not received the perfomance fee or any kickbacks out of it (since it would prove he was acting as a financial intermediary without an FMA-license). Therefore, the performance fee of approximatley CHF 13 – 16.5 million (USD 13 – 16.5 million) is unaccounted for.

20. AFS and LLB in the Liechtenstein action argue in their counterstatements that accepting the additional subscriptions amounting to USD 8.9 million would have led to a decrease of the STS Tech Fund performance to 136.4%. Instead of a 30% performance fee of CHF 13 – 16.5 million (USD 13 – 16.5 million), the performance fee would have been 15% or CHF 6.2 million (USD 6.2 million), slightly more than one third of the actual performance fee.

21. AFS stated in its Q3/2020 investors information that it was able to enter into 11 share purchase agreements ("SPA") to buy Palantir shares three of which could not be completed due to varying reasons that are not comprehensible for Petitioner.

22. Petitioner alleges that the circumstances described herein and others imply a self-interest of AFS / Zulliger and Hartmann to protect their investment from being diluted and/or prevent the performance from falling under 200% as it would significantly reduce their own investment performance or their performance fee.

23. I therefore respectfully submit that information from Palantir will shed light on these purported conflicts of interest. It is relevant for the Liechtenstein Action to ascertain who acquired Palantir shares at what time from whom at what price in the period from January 1, 2020 to September 30, 2020 (when Palantir conducted its IPO). Furthermore, documents and correspondence from Palantir may show that AFS, Hartman, Wieker and/or legal structures held/controlled by them purchased Palantir shares in the period January 1, 2020 to September 30, 2020. This information is relevant for the Liechtenstein Action because it can show conflicts of interest between fund management and the acting persons that led to serious damage to the Petitioner. It is to be expected that documents and correspondence at

Palantir may further show that the reasons for the failure of certain SPAs lie on the part of AFS and/or Hartmann. If a conflict of interest on the part of the defendants in the Liechtenstein Action is revealed by discovery from Palantir or if these defendants or their proxies acquired these Palantir shares for themselves or structures held by them, evidence of this nature may be critical in the Liechtenstein Action on liability questions. Information reflecting Mr. Hartmann's contacts with Palantir will be highly relevant to establishing his liability under Liechtenstein law and to discrediting any defense he may seek to assert based on his claims on noninvolvement.

24. Palantir is not a party in the Liechtenstein Action.

25. Based on the legal principles and standards set forth in the accompanying Memorandum of Law, Petitioner believes it should be granted permission to obtain discovery under 28 U.S.C. § 1782(a), because it is an "interested person" with respect to a "proceeding in a foreign … tribunal." As set forth above, the discovery is sought from persons and entities located within this judicial district.

26. I am not aware of any rule or policy that would preclude the Petitioner from submitting evidence obtained in the U.S. pursuant to 28 U.S.C. Section 1782 to the Princely District Court in Liechtenstein.

27. Petitioner and I maintain a good faith belief that the discovery requested may be had in this District. Such discovery is solely for purposes of aiding Petitioner and its co-plaintiff in the prosecution of the claims they have asserted in the Liechtenstein Action, and for purposes

of presentation of evidence to the Princely District Court in Liechtenstein. If the Court grants this application, we will give notice to our adversary of the order allowing discovery and the subpoena in accordance with Federal Rule of Civil Procedure 45.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 30th day of September 2022, at Gamprin-Bendern, Principality of Liechtenstein.

Dr. Alexander Amann



Address FL: Industriestrasse 16 | PO Box 2045 | FL-9487 Gamprin-Bendern
Address CH: Oberrieterstrasse 4 | CH-9444 Diepoldsau